# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.
_____

DONNA MOORE AND WILLIAM NOLAN,

    Plaintiffs,

v.

SCHOOL DISTRICT NUMBER 1, in the CITY AND COUNTY OF DENVER a/k/a DENVER PUBLIC SCHOOLS,

    Defendant.
_____

## COMPLAINT
_____

Come now the Plaintiffs, DONNA MOORE and WILLIAM NOLAN, by and through their counsel, McNamara Roseman & Kazmierski LLP, and for their Complaint against the above-named Defendant, alleges as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. This action is authorized and instituted pursuant to 29 U.S.C. §§ 621 *et seq*; 42 U.S.C. §§ 1981 and 2000(e) *et seq*.

2. The acts complained of herein were committed, or had their principal effect, within the District of Colorado, and therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

## PARTIES

1. Plaintiff William Nolan ("Nolan") is a citizen of the United States and a resident of the State of Colorado. Mr. Nolan was born on December 21, 1948. Mr. Nolan is a black African-American.

2. Plaintiff Donna Moore ("Moore") is a citizen of the United States and resident of the State of Colorado. Ms. Moore was born on February 13, 1949. Ms. Moore is a black African-American.

3. Defendant Denver County School District No. 1, also known as Denver Public Schools ("DPS" or the "District), is a school district organized pursuant to the laws of the State of Colorado, and operating within the City and County of Denver.

## ADMINISTRATIVE PREREQUISITES

4. Plaintiff William Nolan filed a charge of discrimination based on age, race, and color discrimination, as well as retaliation, Charge No. 541-2010-02066, with the Equal Employment Opportunity Commission on August 24, 2010. The United States Department of Justice issued a Notice of Right to Sue with respect to Plaintiff's Charge of Discrimination on February 27, 2014. Plaintiff's Complaint is timely filed in accordance with the Notice.

5. Plaintiff Donna Moore filed a charge of discrimination based on age, race, and color discrimination, as well as retaliation, Charge No. 541-2010-41488, with the Equal Employment Opportunity Commission in 2010. The United States Department of Justice issued a Notice of Right to Sue with respect to Plaintiff's Charge of Discrimination on February 27, 2014. Plaintiff's Complaint is timely filed in accordance with the Notice.

## **GENERAL FACTUAL ALLEGATIONS**

6. Plaintiffs repeat and reallege all previous paragraphs of this Complaint as though fully incorporated herein.

7. DPS is responsible for the primary and secondary education of children in the City and County of Denver, among other functions.

8. In order to perform these functions, DPS employs thousands of teachers and other employees at numerous schools throughout the County, as well as a variety of other locations. At all times material herein, DPS is an employer within the meaning of that term under Federal Law.

9. Mr. Nolan was first hired by DPS in 1983. He had been a teacher for the District for over twenty-six years before he was unceremoniously placed on a "Special Evaluation" and terminated in 2010.

10. Ms. Moore was first hired by DPS in 2001. She had been employed by the District in a variety of roles, most recently as Dean of Students at Montbello High School before she was recommended for dismissal in March of 2010.

11. At the time of their respective discharges, both Ms. Moore and Mr. Nolan had tenure under Colorado law.

12. DPS issued both Ms. Moore and Mr. Nolan performance evaluations throughout their careers with the District. Prior to the 2009-2010 school year, both Ms. Moore and Mr. Nolan had a proven track record of success as documented in these evaluations.

13. From 2001 through the time of his discharge, Mr. Nolan was employed at Montbello High School, teaching science to some of the District's most impoverished and disadvantaged high school students.

14. Likewise, Ms. Moore had been assigned to Montbello since 2003. Ms. Moore served in a variety of capacities at Montbello, including teacher and department chair, prior to becoming Dean of Students.

15. The District's abject failure to develop student success at Montbello is perhaps most amply demonstrated by the fact that during Mr. Nolan's eight years at Montbello, the school had nearly a dozen different principals, *none* of whom stayed more than a year. Indeed, during the 2009-2010 school year in which Mr. Nolan was placed on a "Special Evaluation" and eventually terminated, and Ms. Moore was recommended for dismissal, the school had three different principals.

16. Upon information and belief, Plaintiffs were just two of a number of older, African-American employees at Montbello who were either recommended for dismissal or subject to other adverse employment actions during and shortly following the 2009-2010 school year.

## SPECIFIC ALLEGATIONS -- NOLAN

17. During the nearly ten years Mr. Nolan worked at Montbello, under nearly a dozen different principals, Mr. Nolan's performance was both commendable and regularly commended. During all this time, prior to the arrival of Anthony Smith in early 2010, during the middle of the 2009-2010 school year, *none* of these principals had raised concerns with Mr. Nolan about his performance.

18. Throughout his tenure at Montbello, Mr. Nolan was faced with the task of teaching classrooms full of students who wanted to learn and were a pleasure to teach, but, like other teachers at Montbello, Nolan also faced a much greater degree of disruptive, disrespectful, and potentially dangerous students than did other high school teachers throughout the district.

19. This was no different during the 2009-2010 school year, when a small number of the students Mr. Nolan taught displayed little interest in learning compared with a great interest in inhibiting the learning of others.

20. The 2009-2010 school year started off for Mr. Nolan in the same manner as had previous years, successfully taking on the challenge of teaching his students.

21. By November of the 2009-2010 school year, the school was led by Principal Richard Smith and Assistant Principal Gionni Thompson. Mr. Thompson had *no* administrative experience prior to the 2009-2010 school year, and significantly less teaching experience than Mr. Nolan.

22. In January 2010, Mr. Anthony Smith took over at Montbello, after spending just a single semester working at the school. Within weeks of Smith's ascendance to the Principal position, a number of teachers were placed on "Special Evaluation". Upon information and belief, all of these teachers were over the age of 40 and African-American. Upon information and belief, each of these teachers placed on special evaluation, including Mr. Nolan, did not work for the District in 2010-2011.

23. In January of 2010, Mr. Nolan reported a student for inappropriate behavior at school. Pursuant to district policy, the student's mother was informed of the incident. Several weeks later, upset at his mother having been informed of this behavior, the student began arguing with Nolan and refusing to do classwork. Nolan threw his hands up in the air in frustration.

24. After being called into the office some days later over this incident, Nolan was informed that two students claimed he had "flipped off" this student. Nolan denied having done so. Despite the fact that *each* of these students had significant disciplinary problems, and having *never* spoken to Nolan about the incident, and that no other students reported the matter,

5

Principal Smith issued Nolan a written warning on February 8, 2010. The warning letter is riddled with factual errors and is also based on alleged incidents that occurred more than six weeks earlier but were not previously documented.

25. In the weeks that followed, Nolan was placed on "Special Evaluation" and was informally observed in the classroom on four occasions by Mr. Thompson. Despite the fact that Thompson was unqualified to engage in such observations at all, and never engaged in a single formal observation, which would have been significantly less subjective than the informal observations, Thompson formed the opinion that Mr. Nolan's teaching lacked enthusiasm and direction. Indeed, the "Special Evaluation" process requires a formal observation be done, but the District failed to comply with its own policies.

26. After being placed on "Special Evaluation", Nolan complained to his supervisors at Montbello that younger, white teachers were not being disciplined for acts of comparable significance.

27. On April 30, 2010, Mr. Nolan was in class teaching students, who were supposed to be completing a worksheet. Mr. Nolan approached one group towards the end of class. This group had not completed the assignment, and were talking instead. Nolan lightly tapped a student on the head, and told him that he was a senior and should have known better.

28. Nolan reported this incident immediately and apologized to both the student and his mother. Indeed, the student's mother provided a subsequent statement to DPS strongly supporting Mr. Nolan and indicating he had been an inspiration to her son, and that her son would not have graduated without Nolan.

29. DPS immediately placed Nolan on administrative leave. DPS accused Nolan of having cursed at the student and slapped him. Although both Nolan and a student witness

indicated at the time that Nolan did not curse, DPS nonetheless relied on this as a part of Nolan's termination.

30. In June of 2010, Principal Smith recommended Nolan be dismissed from his employment with DPS, purportedly due to a pattern of poor conduct, as well as due to poor performance. Although Smith indicated Nolan was a poor performer, he had *never* observed Nolan in the classroom. Rather, Smith relied upon information from Thompson in deciding to dismiss Nolan. Indeed, one of the incidents relied upon by Smith in Nolan's dismissal dates from August 2009, and was purportedly observed by Mr. Thompson. Although Thompson reported this incident in late May of 2010, he had not once documented the incident in the preceding eight months, including the February 2010 warning letter.

31. The facts alleged by the District in Smith's recommendation for dismissal are merely a pretext for discrimination.

32. Rather than face the certain dismissal he would have suffered, Nolan felt he had no choice but to elect to retire from his position with DPS. Nolan's actions constitute a constructive discharge.

33. Mr. Nolan has suffered damages as a result of DPS's actions, including lost salary and benefits, and emotional distress.

## SPECIFIC ALLEGATIONS -- MOORE

34. Like Nolan, Moore had been a successful educator and administrator at Montbello for years before Smith and Thompson conspired to remove her from her employment with DPS.

35. Also like Nolan, Moore's performance evaluations reflected this record of success, as did her promotion from teacher to Dean of Students at Montbello.

36. Like any new administrator, Moore faced her share of paperwork difficulties while becoming accustomed to her new position. However, her general performance in the position was nothing short of exemplary. Indeed, Moore stopped a fight in the Montbello cafeteria, potentially saving students from injury. Although she was threatened with a suspension after an allegation that she used force, DPS found the allegations concerning Ms. Moore to be unsubstantiated.

37. Moore also started the 2009-2010 school year without incident, until December 2009, when Thompson was again involved. In early December, an incident arose where a student was alleged to have stolen an IPod. The complaint was later withdrawn after counsel were involved. Although Moore acted appropriately, DPS later alleged she had lied to a DPS attorney during the incident.

38. In early January 2010, after Anthony Smith had taken over as Principal, DPS reviewed Moore's work product and alleged that Moore had made errors in the reporting of five student expulsions. DPS alleged, that this paperwork was completed incorrectly, and that, as a result, a student's expulsion had to be reversed. While the allegation concerning the reversed expulsion is completely baseless, and this is a simple matter of slightly incomplete paperwork, Moore could see the writing on the wall.

39. As she observed other older, African-American teachers being placed on the chopping block, she too began to complain to management both within and outside of Montbello about the horrendous working and learning environment at the school. One of the matters Moore reported concerned a fellow Caucasian Dean at the school who used profanity towards students. Although Moore reported this matter to then Principal Richard Smith, DPS took no action against the Dean involved.

40. In March of 2010, Moore was confronted with the allegations that she lied to a DPS lawyer, and a host of unfounded allegations about her prior conduct, many of which were based solely on Thompson's word. Although these allegations were untrue, the stress from this incident, combined with a variety of other stressors, required Moore to request a medical leave. Moore was on medical leave pursuant to the Collective Bargaining Agreement between DPS and the Denver Classroom Teachers' Association for an extended period.

41. On January 17, 2011, while still on approved and contractually mandated medical leave, DPS's third party-provider determined Moore was completely disabled. The very next day, DPS instituted removal proceedings against Ms. Moore, giving her just five days to request a hearing. As she was still on medical leave, and there was no basis under the applicable teacher tenure law at the time to remove her, Ms. Moore declined to participate in the hearing. DPS claims Ms. Moore was terminated January 28, 2011.

42. The allegations made by DPS with respect to Ms. Moore are merely a pretext for discrimination.

43. Ms. Moore has suffered damages as a result of DPS's actions, including lost salary and benefits, and emotional distress.

## STATEMENT OF CLAIMS

FIRST CLAIM FOR RELIEF – MOORE AND NOLAN
(Age Discrimination and Hostile Work Environment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*)

44. Plaintiffs repeat and reallege all pervious paragraphs of this Complaint as though fully incorporated herein.

45. Plaintiffs are over the age of 40, and thus members of a protected class under the ADEA.

46. Defendant maintained and condoned a hostile work environment on the basis of age that was pervasive and severe.

47. Defendant maintained a workforce and environment that discriminated on the basis of age.

48. Plaintiffs were subjected to a pervasive and severe hostile work environment because of their age.

49. The hostile and discriminatory work environment to which Plaintiffs were subjected adversely affected the terms and conditions of their employment with Defendant.

50. Defendant's conduct in maintaining and condoning a hostile work environment on the basis of Plaintiffs' age was an unlawful employment practice in violation of Title VII.

51. The effect of Defendant's unlawful employment practice has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect their status as employees.

52. Defendant constructively discharged Plaintiff Moore from her position with the District on the basis of her age, despite her satisfactory performance.

53. Defendant dismissed Plaintiff Nolan from his position with the District on the basis of his age, despite his satisfactory performance.

54. Upon information and belief, Defendants replaced Plaintiffs with significantly younger employees.

55. Defendant's unlawful employment practice was intentional.

56. Defendant's conduct was willful and wanton, or was performed in reckless disregard for Plaintiffs' protected rights against discrimination under Title VII.

57. As a direct result of Defendant's unlawful and intentional conduct, Plaintiffs have suffered both economic and non-economic losses and injuries. Plaintiffs pray for relief from their injuries and losses as more fully set forth below.

### SECOND CLAIM FOR RELIEF – MOORE AND NOLAN
(Race/Color Discrimination and Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.*)

58. Plaintiffs repeat and reallege all pervious paragraphs of this Complaint as though fully incorporated herein.

59. Plaintiffs are black African-Americans, and thus members of a protected class under Title VII.

60. Defendant maintained and condoned a hostile work environment on the basis of race/color that was pervasive and severe.

61. Defendant maintained a workforce and environment that discriminated on the basis of race/color.

62. Plaintiffs were subjected to a pervasive and severe hostile work environment because of their race/color.

63. The hostile and discriminatory work environment to which Plaintiffs were subjected adversely affected the terms and conditions of their employment with Defendant.

64. Defendant's conduct in maintaining and condoning a hostile work environment on the basis of Plaintiffs' race/color was an unlawful employment practice in violation of Title VII.

65. The effect of Defendant's unlawful employment practice has been to deprive Plaintiffs of equal employment opportunities and otherwise adversely affect their status as employees.

66. Defendant constructively discharged Plaintiff Moore from her position with the District on the basis of her race/color, despite her satisfactory performance.

67. Defendant dismissed Plaintiff Nolan from his position with the District on the basis of his race/color, despite his satisfactory performance.

68. Upon information and belief, Defendants replaced Plaintiffs with significantly younger employees.

69. Defendant's unlawful employment practice was intentional.

70. Defendant's conduct was willful and wanton, or was performed in reckless disregard for Plaintiffs' protected rights against discrimination under Title VII.

71. As a direct result of Defendant's unlawful and intentional conduct, Plaintiffs have suffered both economic and non-economic losses and injuries.  Plaintiffs pray for relief from their injuries and losses as more fully set forth below.

THIRD CLAIM FOR RELIEF – MOORE AND NOLAN
(RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§2000(e) *et seq.*)

72. Plaintiffs repeat and re-allege all previous paragraphs of his Complaint as though fully incorporated herein.

73. Plaintiffs engaged in protected activity by complaining of age and race/color discrimination to their supervisors at Montbello.

74. Plaintiffs suffered adverse employment actions by the District during the course of their employment and including, but not limited to, being placed on a "Special Evaluation",

being recommended for dismissal, and being terminated, in retaliation for their reports of age and race/color discrimination.

75. Defendant knew that Plaintiffs engaged in the above-stated protected activities and that the adverse actions it took were caused by Plaintiffs' complaints of race and/or age discrimination.

76. Defendant's conduct was willful and wanton, or performed in reckless disregard for Plaintiffs' protected rights against retaliation under § 1981.

77. As a direct result of Defendant's unlawful and intentional conduct, Plaintiffs have suffered both economic and non-economic losses and injuries. Plaintiffs pray for relief from their injuries and losses as more fully set forth below.

## FOURTH CLAIM FOR RELIEF -- NOLAN
### (RACE AND NATIONAL ORIGIN DISCRIMINATION UNDER 42 U.S.C. § 1981)

78. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated herein.

79. Defendant's conduct as set forth herein deprived Plaintiff Nolan, an African American, of the rights and privileges to make and enforce a contract as protected by § 1981.

80. As a proximate result of Defendant's unlawful actions, Plaintiff Nolan has suffered economic and non-economic damages.

81. Defendant's violations of § 1981 were intentional.

82. Defendant's violations of § 1981 were willful and wanton and/or were done with malice and/or reckless indifference to Plaintiff's federally-protected rights.

83. As a result of Defendant's unlawful and intentional conduct, Plaintiff Nolan has suffered economic and non-economic losses and injuries. Plaintiff Nolan prays for relief from his injuries and losses more fully set forth below.

FIFTH CLAIM FOR RELIEF -- NOLAN
(RETALIATION UNDER 42 U.S.C. § 1981)

84. Plaintiffs repeat and re-allege all previous paragraphs of his Complaint as though fully incorporated herein.

85. Plaintiff Nolan engaged in protected activity by complaining of race discrimination to his supervisors at Montbello.

86. Plaintiff Nolan suffered adverse employment action by the District during the course of his employment and including, but not limited to, being placed on a "Special Evaluation" and being terminated, in retaliation for his reports of race discrimination.

87. Defendant knew that Plaintiff engaged in the above-stated protected activities and that the adverse actions it took were caused by Plaintiff Nolan's complaints of race discrimination.

88. Defendant's conduct was willful and wanton, or performed in reckless disregard for Plaintiff's protected rights against retaliation under § 1981.

89. As a direct result of Defendant's unlawful and intentional conduct, Plaintiff has suffered both economic and non-economic losses and injuries. Plaintiff prays for relief from his injuries and losses as more fully set forth below.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs DONNA MOORE and WILLIAM NOLAN respectfully pray for an order of this honorable Court entering judgment in their favor against Defendant, and that it order the following relief:

A. Declare that the acts and practices complained of herein were in violation of federal laws, and constituted intentional and/or willful conduct by Defendant;

B. Enjoin and permanently restrain these violations;

C. Direct Defendant to take affirmative steps as are necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiffs' employment opportunities;

D. Award Plaintiffs their actual economic damages in an amount to be determined at trial to compensate them for any lost wages, benefits, and lost employment opportunities;

E. Award Plaintiffs compensatory damages including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

F. Award Plaintiffs punitive and/or liquidated damages, as allowed by law, and to be determined at trial;

G. Retain jurisdiction of this matter to ensure full compliance with the orders of this Court;

H. Award Plaintiffs reasonable attorneys' fees and costs of this litigation;

I. Award Plaintiffs pre-judgment and post-judgment interest as the highest lawful rate;

J. Award Plaintiffs the costs of this action, together with reasonable expert witness fees, as provided by law; and

K. Grant such other and further relief as this Court deems necessary, proper, and just.

**PLAINTIFFS REQUEST A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 28th day of May, 2014.

                                  McNAMARA ROSEMAN
                                  & KAZMIERSKI LLP


                                  /s/ Todd J. McNamara, Esq._____
                                  /s/ Mathew S. Shechter, Esq.
                                  Todd J. McNamara, Esq.
                                  Mathew S. Shechter, Esq.
                                  1640 East 18th Avenue
                                  Denver, Colorado 80218
                                  (303) 333-8700
                                  Fax: (303) 331-6967
                                  Email:  tjm@18thavelaw.com
                                                 mss@18thavelaw.com


*Plaintiffs' Addresses*:
Donna Moore
16199 Green Valley Ranch Blvd., #1912
Denver, CO 80239

William Nolan
5151 Troy Street
Denver, CO 80239